UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cr-80052-Ruiz/Reinhart

18 U.S.C. § 1347
18 U.S.C. § 1035(a)(2)
18 U.S.C. § 2
18 U.S.C. § 982(a)(7)

UNITED STATES OF AMERICA,

v.

LAUREN ROSECAN,

Defendant.
_____/

FILED BY SP D.C.

JUN 26 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

## INFORMATION

The United States Attorney charges that:

## GENERAL ALLEGATIONS

At all times material to this Information:

### Medicare Program

1. The Medicare program ("Medicare") is a federal health care program providing benefits to persons who are over the age of sixty-five or disabled.

2. Medicare is a "health care benefit program," as defined by Title 18, United States Code, Section 24(b). Individuals who receive benefits under Medicare are referred to as Medicare "beneficiaries."

3. "Part B" of the Medicare program is a medical insurance plan that pays Medicare providers and suppliers, with the exception of inpatient healthcare facilities, directly for covered goods and services.

4. "Part C" of the Medicare program allows Medicare beneficiaries to receive covered benefits through private health insurance companies, rather than directly through Medicare itself. These health care benefit programs follow the Medicare rules and regulations in determining coverage and payment for medical services rendered to beneficiaries.

5. In addition to Medicare Part B and Part C health care plans, beneficiaries may also obtain "supplemental" plans from private health insurance companies, which cover the beneficiaries' co-pay obligations under Medicare. All of these plans follow Medicare rules and regulations as well.

6. Medicare is administered by the United States Department of Health and Human Services ("HHS") through its agency, the Centers for Medicare and Medicaid Services ("CMS"). CMS contracts with regional fiscal intermediaries, also known as Medicare administrative contractors ("MACs"), to receive, adjudicate, and pay Medicare claims submitted by Medicare providers. First Coast Service Options, Inc. ("First Coast") serves as the MAC in the State of Florida.

7. Medical clinics or doctors who seek to be reimbursed for medical services provided to Medicare beneficiaries must first apply for and receive a Medicare "provider number." In signing a provider agreement, the provider agrees to abide by the Medicare laws, regulations, and program instructions. Among these obligations is the requirement that the provider submit claims only for reasonable and necessary medical services. In submitting a claim, the provider must set forth, among other things, the beneficiary's name and Medicare number, the services provided, the diagnosis justifying the services, the date the services were provided, the cost of the services, and the name and provider number of the physician or other health care provider who ordered the services.

8. To aid in the processing and adjudication of claims, Medicare providers are required to use standardized codes to describe the pertinent diagnoses and the procedures for which payment is being sought. With respect to diagnoses, providers are required to use the codes established in the International Classification of Diseases Manual ("ICD Codes"). ICD Codes relevant to this Information, include, but are not limited to, the following: 1906, C6930, C6931 and C6932, all related to a diagnosis of a malignant neoplasm of the choroid, i.e. choroidal melanoma; and 2240 and 2246, related to diagnosis of a benign neoplasm, i.e. a nevus.

9. The Health Care Financing Administration Common Procedural Coding System ("HCPCS") is the coding system used by Medicare to identify every task, service, or procedure a medical practitioner may provide to a patient, including medical, surgical, and diagnostic services. The HCPCS is based upon the Physicians' Current Procedural Terminology code book ("CPT Code") developed by the American Medical Association. On their claims for payment, medical providers state the HCPCS/CPT Codes (hereinafter referred to as "CPT Codes") that identify the types of services for which Medicare is being charged. These codes are used to determine reimbursement. For any claim to be payable, the procedure performed must be reasonable and necessary for the particular diagnosis. In other words, the diagnosis, as reflected in the ICD code, must support the medical necessity of the particular procedure performed. CPT Codes, their Medicare definitions and common descriptions relevant to this Information include, but are not limited to, the following:

| CPT Code | Medicare Definition | Common Description |
|---|---|---|
| 67210 | Laser destruction of retinal growth, 1 or more sessions | Focal laser photocoagulation of retina |
| 67220 | Destruction of vascular growth between retina and the sclera, 1 or more sessions | Focal laser photocoagulation of choroid |
| 67228 | Laser destruction of leaking retinal blood vessels, 1 or more sessions | Pan Retinal Photocoagulation ("PRP") of retina |
| 76510 | Ultrasound of eye tissue and structures | A and B-Scan |

| CPT Code | Medicare Definition | Common Description |
|---|---|---|
| 76512 | Ultrasound of eye disease, growth or structure | B-Scan |
|  |  |  |

10. In addition to the basic CPT Codes, there are a number of "modifiers" that are two-digit or two-letter supplements that provide additional information about the procedure. For example, in ophthalmology, the provider must specify the eye upon which a procedure has been performed. For some procedures, the modifier "50" is used to indicate that the procedure was bilateral, i.e., performed on both eyes. For other procedures, the suffix RT or LT is used to indicate that the procedure was performed on the right eye or left eye, respectively.

11. Under the laws that regulate the Medicare program, no payment may be made for any expenses incurred for items or services that are not reasonable and necessary for the diagnosis or treatment of illness or injury. In general, Medicare makes the physician the "gatekeeper" for determining when medical testing and treatment are medically reasonable and necessary. To receive reimbursement, providers are obligated to follow all Medicare rules and regulations.

12. Medicare permits claims to be submitted electronically. To do so, a provider must enroll in electronic billing through the MAC. By submitting an enrollment form, a provider agrees that all claims will be accurate, complete, and truthful. Further, the provider's unique identification number affixed to a claim constitutes a lawful electronic signature verifying that the services are medically reasonable and necessary and were performed as billed. In order to timely process the many millions of claims generated annually in the Medicare program, Medicare relies upon the honesty and integrity of providers who certify the validity of their claims.

## The Defendant

13. The defendant, **LAUREN ROSECAN**, operated medical clinics under the name The Retina Institute of Florida ("RIF"). The defendant had several office locations in Palm Beach, Martin, and Port St. Lucie Counties in the Southern District of Florida.

14. The defendant was an ophthalmologist and retina specialist licensed to practice medicine in the State of Florida. As a retina specialist, the defendant treated conditions and diseases of the retina. At all times material to this Information, the defendant was the only licensed physician practicing at RIF.

15. The defendant was an approved Medicare service provider. A substantial portion of his client base was composed of elderly patients who were Medicare beneficiaries.

## CHOROIDAL MELANOMA

16. Choroidal melanoma (hereinafter referred to as "CM") is a malignant cancer or tumor of the eye originating in the choroid, which is a vascular layer of tissue located behind the retina. CM is a very rare form of cancer, being diagnosed in approximately five persons per million per year in the United States. There are highly trained ophthalmologists, known as ocular oncologists, who specialize in cancers of the eye.

17. There are several treatment options for CM, ranging from observation (for small tumors), to radiation (medium-sized tumors), to enucleation or removal of the eye. The most successful treatment in the past decade has been radiation, which, for small and medium-sized tumors, has had a non recurrence rate of approximately 95%.

18. Laser treatments have also been used to treat small CM tumors, the most common being transpupillary thermotherapy ("TTT"). TTT involves the use of a diode laser to slowly heat the tumor, thus killing the cancer cells.

19. Focal laser photocoagulation ("focal laser") consists of shining a high-intensity laser light beam into the eye under magnification in order to burn, or cauterize, actively leaking blood vessels. Focal laser has also been used in the past to treat CM, but has largely been abandoned in favor of more successful treatments, in particular, radiation.

20. Pan retinal photocoagulation ("PRP") is a laser treatment used to treat people who have developed new abnormal blood vessels at the back of the eye in the retina, generally in patients with diabetic retinopathy. It is not a recognized treatment for CM. In PRP the laser is applied in a scatter pattern over a wide area of the retina. Medicare reimburses a doctor for the performance of PRP at a higher rate than that of focal laser.

## CHOROIDAL NEVUS

21. A choroidal nevus is a benign lesion or growth located in the back of the eye. It is sometimes referred to as an eye freckle and is relatively common in Caucasians, occurring in about 5-8% of that population. A nevus can generally be differentiated from a melanoma based on its size (1 mm or less in thickness), color, and other distinguishing features. It has no effect on vision, and no treatment of a nevus is medically indicated.

## DIAGNOSTIC TESTING

22. Ultrasonography (A-scans and B-scans) is an essential tool in the diagnosis and treatment of CM. Ultrasonography is a diagnostic imaging procedure that uses sound waves to capture images of the inside and back of the eye. In addition to being used to assess the internal structure of the eye when the physician's view into the eye is otherwise obscured, an ultrasound may also be used to measure the height and reflectivity of tumors in the back of the eye. Consequently, ultrasound is used to capture and document the presence and size of a CM.

23. Fundus photography is routinely utilized by ophthalmologists for diagnosis and documentation of a variety of retinal diseases and conditions. The interior of the eye, known as the fundus, may be photographed with a specialized camera that is attached to a low-power microscope. A fundus photograph captures the same view of the retina as would be seen by a doctor upon visual examination of the eye through a magnification device called an ophthalmoscope. Fundus photographs may be taken in color or without color. The photographs that are not in color are referred to as "red free" photographs. Fundus photography is used to capture and document the presence of an abnormality such as CM.

24. Fluorescein angiography (FA) and indocyanine green angiography ("ICG") also capture abnormalities in the retina and choroid. These tests begin with the intravenous administration of certain dyes into a vein in the patient's arm, following which pictures are taken of the retina and choroid through special filters on the fundus camera. FAs and ICGs are used to capture and document the presence of an abnormality such as CM.

## COUNTS 1-14
## Health Care Fraud
## (18 USC § 1347)

25. Paragraphs 1 through 24 of the General Allegations section of this Information are realleged and incorporated by reference as though fully set forth herein.

26. Beginning at least as early as 2012, the exact date being unknown, and continuing at least to and through December 31, 2015, in Palm Beach, Martin, and St. Lucie Counties, in the Southern District of Florida, and elsewhere, the defendant,

**LAUREN ROSECAN,**

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud Medicare and other health care benefit programs affecting commerce, as defined by Title 18, United States

Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of Medicare and other health care benefit programs.

### Purpose and Object of the Scheme and Artifice

27. It was the purpose and object of the scheme and artifice for the defendant, **LAUREN ROSECAN**, to unlawfully enrich himself by, among other things, falsely diagnosing patients with choroidal melanoma ("CM"); performing medically unreasonable and unnecessary diagnostic tests and procedures; making false entries in patients' medical charts; and submitting claims to Medicare and other health care benefit programs based upon said false diagnoses, treatments and entries in patient medical charts.

### The Scheme and Artifice

28. The manner and means by which the defendant sought to accomplish the purpose and object of the scheme and artifice to defraud included, among other things, the following:

a) The defendant would falsely diagnose a substantial number of his Medicare patients with CM, either upon the initial patient visit, or in a subsequent visit. In many instances, the defendant would diagnose the condition bilaterally, that is, in both of the patient's eyes. In other instances, the defendant would diagnose the condition in both husband and wife of a married couple.

b) The defendant would take ultrasounds (A and B-Scans) of patients' eyes and would then place markers on the images, purportedly to measure mid to large sized tumors, when, in fact, no such tumors were present.

c) The defendant would perform laser treatments on said patients, primarily pan retinal photocoagulation, which has never been a recognized treatment for CM.

d) The defendant would not refer said patients to an ocular oncologist or even another ophthalmologist in order to provide a second opinion. To the contrary, the defendant actively discouraged patients from obtaining a second opinion.

e) The defendant would cause patients to return to his clinic on a regular basis for followup visits, which, in some instances, involved repeated laser photocoagulation sessions.

f) The defendant would cause patient files to contain false information, including false diagnoses, measurements, drawings, and diagrams.

g) The defendant would cause the submission of claims to Medicare for exams, diagnostic tests, and laser treatments based upon the false diagnoses and medically unnecessary and medically unreasonable treatments for CM.

## Execution of the Scheme and Artifice

29. In execution of the scheme and artifice to defraud, in Palm Beach, Martin, and St. Lucie Counties, in the Southern District of Florida, and elsewhere, the defendant,

**LAUREN ROSECAN,**

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in that the defendant did submit and cause the submission of claims to Medicare under diagnostic code 1906 (choroidal melanoma) for the below-listed patients, among others, on or about the dates as further described below:

| COUNT | PATIENT | DATE OF SERVICE | DATE OF CLAIM | PROCEDURE CODE AND DESCRIPTION | | AMOUNT BILLED |
|---|---|---|---|---|---|---|
| 1 | Benjamin F. | 4/14/15 | 4/20/15 | 67228-RT | Destruction of leaking retinal blood vessels [PRP] | $1,930 |
| 2 | Benjamin F. | 4/21/15 | 4/22/15 | 67228-LT | Destruction of leaking retinal blood vessels [PRP] | $1,930 |
| 3 | Dorothy R. | 4/15/15 | 4/20/15 | 67228-RT | Destruction of leaking retinal blood vessels [PRP] | $1,930 |
| 4 | Dorothy R. | 4/17/15 | 4/22/15 | 67228-RT | Destruction of leaking retinal blood vessels [PRP] | $1,930 |
| 5 | Barbara F. | 4/13/15 | 4/20/15 | 67228-RT | Destruction of leaking retinal blood vessels [PRP] | $1,930 |
| 6 | Anna P. | 5/4/15 | 5/5/15 | 67228-LT | Destruction of leaking retinal blood vessels [PRP] | $1,930 |
| 7 | Anna P. | 5/18/15 | 5/19/15 | 67228-RT | Destruction of leaking retinal blood vessels [PRP] | $1,930 |
| 8 | Richard L. | 6/5/15 | 6/9/15 | 67228-LT | Destruction of leaking retinal blood vessels [PRP] | $1,930 |
| 9 | Richard L. | 6/12/15 | 6/22/15 | 67228-RT | Destruction of leaking retinal blood vessels [PRP] | $1,930 |
| 10 | Thelma F. | 6/11/15 | 6/12/15 | 67228-RT | Destruction of leaking retinal blood vessels [PRP] | $1,930 |
| 11 | Wilma M. | 8/17/15 | 8/20/15 | 67228-LT | Destruction of leaking retinal blood vessels [PRP] | $1,930 |
| 12 | Wilma M. | 8/19/15 | 8/24/15 | 67228-RT | Destruction of leaking retinal blood vessels [PRP] | $1,930 |
| 13 | Fred M. | 8/17/15 | 8/20/15 | 67228-RT | Destruction of leaking retinal blood vessels [PRP] | $1,930 |
| 14 | Fred M. | 8/19/15 | 8/24/15 | 67228-LT | Destruction of leaking retinal blood vessels [PRP] | $1,930 |

All in violation of Title 18, United States Code, Sections 1347 and 2.

## COUNTS 15-22
## False Statements Relating to Health Care
## (18 U.S.C. §§ 1035(a)(2) and 2)

30. Paragraphs 1 through 24 of the General Allegations section of this Information are realleged and incorporated by reference as though fully set forth herein.

31. On or about the dates set forth below as to each count, in Palm Beach, Martin, and St. Lucie Counties, in the Southern District of Florida, the defendant,

**LAUREN ROSECAN,**

in a matter involving a health care benefit program, to wit, Medicare, did knowingly and willfully make and use a materially false writing and document knowing the same to contain a materially false, fictitious, and fraudulent statement and entry, in connection with the delivery of and payment for health care benefits, items, and services, in that the defendant would make and cause to be made false entries into the charts of Medicare patients, that is, false measurements of purported choroidal melanoma, as well as false diagnoses and fictitious retinal drawings, as further set forth below:

| Count | Patient | Date of Service |
|---|---|---|
| 15 | Benjamin F. | 4/14/15 |
| 16 | Dorothy R. | 4/15/15 |
| 17 | Barbara F. | 4/13/15 |
| 18 | Anna P. | 5/4/15 |
| 19 | Richard L. | 6/5/15 |
| 20 | Thelma F. | 6/11/15 |
| 21 | Wilma M. | 8/17/15 |
| 22 | Fred M. | 8/17/15 |

All in violation of Title 18, United States Code, Sections 1035(a)(2) and 2.

## FORFEITURE ALLEGATIONS

1. The allegations of this Information are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **LAUREN ROSECAN**, has an interest.

2. Upon conviction of a violation of Title 18, United States Code, Sections 1035(a)(2) or 1347, as alleged in this Information, the defendant shall forfeit to the United States all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offense, pursuant to Title 18, United States Code, Section 982(a)(7).

All pursuant to Title 18, United States Code § 982(a)(7), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1).

_[signature]_ FOR
ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

_[signature]_
ROGER H. STEFIN
ASSISTANT UNITED STATES ATTORNEY

_[signature]_
ALEXANDRA CHASE
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO. 20-cr-80052-Ruiz/Reinhart

v.

## CERTIFICATE OF TRIAL ATTORNEY*

**LAUREN ROSECAN,**

**Superseding Case Information:**

_____ Defendant. _____ /

| Court Division: (Select One) | | New defendant(s) | Yes ___ No ___ |
|---|---|---|---|
| ___ Miami | ___ Key West | Number of new defendants | ___ |
| ___ FTL | ✓ WPB ___ FTP | Total number of counts | ___ |

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:  (Yes or No)  No
   List language and/or dialect  _____

4. This case will take  20  days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                    (Check only one)

   I    0 to 5 days       ___          Petty    ___
   II   6 to 10 days      ___          Minor    ___
   III  11 to 20 days     ✓            Misdem.  ___
   IV   21 to 60 days     ___          Felony   ✓
   V    61 days and over  ___

6. Has this case previously been filed in this District Court?  (Yes or No)  No
   If yes: Judge _____ Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?  (Yes or No)  No
   If yes: Magistrate Case No. _____
   Related miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the District of _____
   Is this a potential death penalty case? (Yes or No)  No

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)?     Yes ___  No ✓

8. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?     Yes ___  No ✓

9. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?     Yes ___  No ✓

_Roger H. Stefin_
ASSISTANT UNITED STATES ATTORNEY
ROGER STEFIN

*Penalty Sheet(s) attached

REV 6/5/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: __LAUREN ROSECAN__

Case No: __20-cr-80052-Ruiz/Reinhart__

Count #: 1-14

Health Care Fraud
Title 18, United States Code, Section 1347

\* **Max. Penalty**: 10 years' imprisonment; 3 years' supervised release; fine of $250,000 or twice the gross gain or loss resulting from the offense, whichever is greater; and restitution

Counts #: 15-22

False Statements Relating to Health Care
Title 18, United States Code, Sections 1035(a)(2) and 2)

\* **Max. Penalty**: 5 years' imprisonment; 3 years' supervised release; and fine of $250,000 or twice the gross gain or loss resulting from the offense, whichever is greater; and restitution

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) |
| v. | ) Case No. 20-cr-80052-Ruiz/Reinhart |
| LAUREN ROSECAN | ) |
| Defendant | ) |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

Dennis Urbano, Esq.
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 20-cr-80052-Ruiz/Reinhart

### BOND RECOMMENDATION

DEFENDANT: LAUREN ROSECAN

$50,000 Personal Surety
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA: ROGER H. STEFIN

Last Known Address: _____

What Facility: _____

Agent(s): Special Agent Wende Bardfeld
(FBI) (SECRET SERVICE) (DEA) (IRS) (ICE) (**OTHER**)
FBI